Suzette MARSHALL and Harris County Child Protective Services, Appellants,

v.

Steve SACKETT, Olga Sackett, and Sarah Sackett, Appellees.

No. 01–94–01228–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 21, 1995.

Rehearing Overruled Oct. 5, 1995.

Dan Morales, Jorge Vega, Delmar L. Cain, Elizabeth N. Golden, Halley Wallingford Ortiz, Austin, for appellants.

Bonnine Wulff, Dallas, Tom Sanders, Sugar Land, for appellees.

Before WILSON, HEDGES and HUTSON–DUNN, JJ., concur.

## OPINION

HUTSON–DUNN, Justice.

This is an appeal from the denial and denial in part of a joint motion for summary judgment filed by the appellants, Suzette Marshall and Harris County Child Protective Services, defendants in the trial court below.

See TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1995) (person may appeal interlocutory order of district court that denies motion for summary judgment based upon assertion of official immunity). The issue before this Court is whether the defendants conclusively proved their affirmative defenses of official and sovereign immunity in a case arising out of the investigation of a report alleging the medical neglect of a child. We reverse the judgment of the trial court and render judgment in favor of the defendants as to all of the causes of action presented before this Court for review.

## I. Summary of Facts

On February 26, 1991, Richard Hurwitz, M.D., reported to Harris County Child Protective Services (HCCPS) that Steven and Olga Sackett were medically neglecting their child Sarah. Dr. Hurwitz said that Sarah had stage III large cell lymphoma, a type of cancer, and her parents refused to subject her to the treatment necessary to save her life. HCCPS conducted an investigation that led to the filing of a petition to affect the parent-child relationship in district court. In the petition, HCCPS sought appointment as managing conservator of Sarah pursuant to TEX.FAM.CODE ANN. § 14.01(a) (Vernon 1995).[1] HCCPS asserted that the appointment of the Sacketts as Sarah's managing conservators would not be in Sarah's best interest because the appointment would significantly impair her physical health. HCCPS also requested the court to grant the following immediate relief after a show cause hearing:

(1) to appoint HCCPS as temporary managing conservator of Sarah;

(2) to appoint the Sacketts as temporary possessory conservator of Sarah;

(3) to order the Sacketts to pay child support during the pendency of the suit;

(4) to enjoin the Sacketts from interfering in any way with HCCPS's possession of

---

1. This section was recently recodified as TEX.FAM. CODE ANN. § 153.005. Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex.Sess.Law Serv. 113, 147.

Sarah by taking or attempting to take possession of her; and

(5) to enjoin the Sacketts from removing Sarah from Harris County.

At the first show cause hearing, Joe Reynolds, the Sacketts' attorney, stated that Mr. Sackett believed that Dr. Hurwitz was not competent to treat Sarah. He further stated that Mr. Sackett did not object to M.D. Anderson Cancer Center in Houston treating Sarah, but he wanted the case dismissed. Reynolds stated that Sarah was receiving treatment for her cancer in Mexico, and Mrs. Sackett would not bring Sarah back to Texas because she feared that HCCPS would take Sarah. The parties agreed that Sarah's protocol would be reviewed by doctors at M.D. Anderson to determine if it was appropriate for her type of cancer. The show cause hearing was reset for a later date.

After a series of hearings, the court held another show cause hearing from May 14 through 16, 1991. Dr. Ernesto Contreras, Sarah's treating physician in Mexico, testified by phone on behalf of the Sacketts that his treatment was appropriate for Sarah. However, Archie Bleyer, M.D., a doctor at M.D. Anderson, and Dr. Hurwitz both testified that Dr. Contreras's treatment was ineffective and specified what they thought was the proper treatment for Sarah's disease. At the conclusion of the hearing, the trial court ordered that Sarah return to Mexico for further treatment. The court requested the Sacketts to return Sarah to M.D. Anderson after her treatment in Mexico for evaluation of her progress. The show cause hearing was continued until May 30, 1991.

At the May 30 show cause hearing, the court requested a doctor from M.D. Anderson to evaluate Sarah's progress after her return from Mexico. The doctor stated that M.D. Anderson would not examine Sarah because she was undergoing inadequate treatment, and M.D. Anderson did not want

to assume responsibility for her health. The court denied HCCPS's petition at the final show cause hearing on June 19, 1991, and it dismissed the case for want of prosecution on January 13, 1992.

## A. The Pleadings

The Sacketts filed suit against HCCPS and one of its program directors, Suzette Marshall, for the manner in which the defendants investigated the medical neglect allegations.[2] In their seventh amended petition, the Sacketts claimed that HCCPS and Marshall attempted to take Sarah in order to subject her to experimental medical treatment under the care of Dr. Hurwitz, a physician that the Sacketts did not trust. The Sacketts alleged that Dr. Hurwitz reported them to HCCPS in retaliation for taking their daughter elsewhere for medical treatment. They claimed that their fear of losing Sarah prior to the trial court's dismissal of HCCPS's petition forced them to flee to Mexico. The Sacketts sought damages against HCCPS for emotional distress, disruption of medical treatment, and unnecessary travel and housing expenses, based upon the following causes of action:

(1) Negligence in not fulfilling its duty to adequately investigate the alleged claims of neglect in violation of TEX.FAM.CODE ANN. § 34.05 (Vernon 1986 & Supp.1995),[3] and in refusing to discontinue the investigation;

(2) negligent use of telephones and file papers pursuant to the Texas Tort Claims Act. See TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986);

(3) violation of the Sacketts' privacy rights pursuant to article 1, section 19 of the Texas Constitution. TEX. CONST. art. 1, § 19; and

(4) violation of the Sacketts' "liberty interest," damaging their reputations, and jeop-

---

**2.** The Sacketts additionally filed suit against the following parties who are not privy to this appeal: (1) Texas Children's Hospital; (2) Dr. Hurwitz; and (3) Baylor College of Medicine.

**3.** This section was recently recodified as TEX.FAM. CODE ANN. §§ 261.301–.311. Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex.Sess.Law Serv. 113, 262–65.

ardizing their future employment by placing their names in the HCCPS central registry, for which the Sacketts sought attorney's fees pursuant to the Uniform Declaratory Judgments Act. TEX.CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986).

The Sacketts also asserted these causes of action against Marshall.

In their answer, the defendants generally denied the Sacketts' claims and asserted the affirmative defenses of sovereign and official immunity.

### B. The Motions

The defendants jointly moved for summary judgment. Marshall moved for summary judgment as to all claims pursuant to the commonlaw doctrine of official immunity. HCCPS alleged that the Sacketts' claims were barred by sovereign immunity under the Texas Tort Claims Act. TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986). HCCPS also asserted sovereign immunity based upon Marshall's official immunity. *See DeWitt v. Harris County*, 904 S.W.2d 650, 654–55 (Tex.1995) (governmental entity is not liable under section 101.021(2) of Civil Practice and Remedies Code for the negligence of its employee when the employee has no liability because of official immunity). Finally, HCCPS argued that the Sacketts' claim for declaratory relief was inappropriate and untimely.

On the same day that the defendants filed their joint motion for summary judgment, the Sacketts filed an eighth amended petition that added a cause of action against the defendants. The Sacketts alleged that they were injured "as a result of the condition and/or use of the tangible personal property of the petition" that HCCPS filed negligently or for the purpose of harassment. The Sacketts also filed a response to the motion for summary judgment and asserted that they had submitted sufficient summary judgment evidence to raise a fact issue as to Marshall's official immunity defense, and the affirmative defense of sovereign immunity was therefore not available to HCCPS. The defendants filed a supplemental joint motion for summary judgment and asserted that sovereign immunity had not been waived as to the Sacketts' additional cause of action.

The trial court granted summary judgment in favor of HCCPS with reference to the use of property under the Texas Tort Claims Act and to the claim under the Uniform Declaratory Judgment Act. However, the court denied the motion for summary judgment as to Marshall. After Marshall filed her notice of intent to appeal this case, and before HCCPS filed its notice of appeal, the Sacketts filed a ninth amended petition that deleted all of their previously asserted claims against the defendants except the cause of action based upon a state constitutional right to privacy. Further, the Sacketts added a second constitutional tort by alleging that the defendants interfered with the Sacketts' right of conscience in matters of religion under the Texas Constitution. TEX. CONST. art. I, § 6.

## II. Scope and Standard of Review

We first consider the effect of the Sacketts' ninth amended petition to this appeal. As noted, the Sacketts filed their ninth amended petition in this case after the trial court rendered partial summary judgment in favor of HCCPS. Although this petition was filed after Marshall filed her notice of intent to appeal, the trial court still had jurisdiction over the lawsuit since a final judgment had not yet been rendered.

■ The Sacketts' ninth amended petition deleted all causes of action from their previous pleadings except the privacy claim, and it added an additional cause of action based upon the defendants' alleged interference with the Sacketts' religious beliefs. We do not consider this petition because it was not presented to the trial court before the court ruled upon the defendants' motion for summary judgment, and the defendants thus did not address it in their motion. *See State Bd. of Ins. v. Westland Film Indus.*, 705 S.W.2d 695, 696 (Tex.1986) (any issue not expressly presented to trial court may not be consid-

ered on appeal as ground for reversal); TEX. R.CIV.P. 166a(c). Therefore, we must consider whether Marshall proved official immunity against all of the claims in the Sacketts' eighth amended petition. If Marshall is entitled to official immunity on these claims, HCCPS is also entitled to sovereign immunity.[4]

In their three points of error, the defendants contend that they conclusively proved Marshall's official immunity, and the Sacketts did not submit sufficient contradictory summary judgment evidence to raise a fact issue regarding her immunity. The Sacketts contend that the defendants did not conclusively prove Marshall's official immunity because a fact issue exists whether Marshall acted in good faith by seeking permanent custody of Sarah when a lesser intrusive remedy was available.

HCCPS further contends that, by conclusively proving Marshall's official immunity, it also proved its affirmative defense of sovereign immunity as a matter of law. See De-Witt, 904 S.W.2d at 654–55 (governmental entity is not liable under section 101.021(2) of tort claims act for the negligence of its employee when the employee has no liability because of official immunity); TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1986). Since a governmental entity's interlocutory appeal of the denial of a motion for summary judgment must be based upon an individual's assertion of official immunity,[5] the relevant issue for our consideration is whether the defendants proved Marshall's official immunity as a matter of law.

### A. Summary Judgment

■ The standard of review in a summary judgment proceeding is well settled. A defendant may obtain a summary judgment on the plaintiff's cause of action by moving for summary judgment on an affirmative defense and proving all of the essential elements of its defense as a matter of law. Montgomery v. Kennedy, 669 S.W.2d 309, 310–11 (Tex.1984). If the defendant produces sufficient evidence to establish the right to a summary judgment, the plaintiff must set forth contradictory evidence that gives rise to a fact issue to avoid summary judgment. Goldberg v. U.S. Shoe Corp., 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). On appeal, evidence favorable to the nonmovant will be taken as true; every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. Montgomery, 669 S.W.2d at 311.

### B. The "Good Faith" Element of Official Immunity

■ Official immunity is an affirmative defense that shields a public employee from personal liability upon proof that the suit arose out of the employee's good faith performance of discretionary duties that were within the scope of his authority. City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.1994). The Sacketts do not contest that Marshall's employment with HCCPS involved discretionary duties, and they have stipulated that Marshall's performance of those duties was within the scope of her employment. Therefore, the only issue that remains is whether the defendants conclusively proved that Marshall performed her duties in good faith.

The supreme court in Chambers stated a definition of good faith that is substantially

---

**4.** The Texas Supreme Court recently recognized that there is no implied right of action for damages for violation of a person's speech and assembly rights under the Texas Constitution. City of Beaumont v. Bouillion, 896 S.W.2d 143, 145–50 (Tex.1995). The trial court did not have the benefit of this decision when it refused to grant HCCPS's motion for summary judgment against the Sacketts constitutional cause of action on the ground that the Texas Constitution did not waive HCCPS' sovereign immunity. Nevertheless, we cannot consider whether the trial court should have granted summary judgment on this ground. Section 54.014(5) permits an appeal from the denial of a motion for summary judgment only when the government claims sovereign immunity based upon an individual's assertion of official immunity. City of Houston v. Kilburn, 849 S.W.2d 810, 812 (Tex.1993).

**5.** Kilburn, 849 S.W.2d at 811–12; TEX.CIV.PRAC. & REM.CODE ANN. § 54.014(5) (Vernon Supp.1995).

derived from the test for claims of official immunity that are asserted against federal claims brought under 42 U.S.C. § 1983 (1994). *Chambers,* 883 S.W.2d at 656 (citing *Swint v. City of Wadley,* 5 F.3d 1435, 1441–42 (11th Cir.1993) and *Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir.1991)). Further, this Court recently recognized that a public official may assert the affirmative defense of official immunity against a state constitutional tort. *See Fowler v. Szostek,* 905 S.W.2d 336 (Tex.App.—Houston [1st Dist.], August 3, 1995, n.w.h.) (summary judgment affirmed based upon public officer's assertion of official immunity against state due process claim).

■ In determining whether a public official has acted in good faith, the test is one of objective legal reasonableness, and we need not consider whether the governmental official acted with subjective good faith. *Chambers,* 883 S.W.2d at 656. In this case, we look to whether a reasonable child protective services official could have believed that Marshall's conduct was justified in light of clearly established law and the information possessed by Marshall when she acted. *See id.* at 656–57. To controvert summary judgment proof on good faith, the Sacketts must produce evidence to show that no reasonable official in Marshall's position could have thought that Marshall's acts were justified based upon the facts before her. *Id.* at 657.

## III. Analysis

### A. Sufficiency of the Defendants' Summary Judgment Proof

■ To support their contention that Marshall acted in good faith, the defendants at-tached 14 exhibits to their motion for summary judgment.[6] These exhibits included: (1) HCCPS's original petition to affect the parent-child relationship; (2) the Sacketts' seventh amended petition; (3) the documents contained in Sarah's case file; (4) a manual detailing HCCPS's intake and investigation procedures; (5) Marshall's deposition; (6) a sworn statement by Dr. Hurwitz; and (7) three affidavits.

The defendants' summary judgment evidence established the following: In his sworn statement to HCCPS, Dr. Hurwitz stated that Sarah had undergone emergency surgery, and her parents were resistant to chemotherapy, which had a 90 percent cure rate. Hurwitz stated that the Sacketts preferred to treat Sarah with alternative therapies, such as laetrile and the regulation of diet, but these therapies had not been proven effective for Sarah's disease. Hurwitz concluded that Sarah would die of cancer without appropriate therapy in the near future.

Sarah's case file contained evidence that the Sacketts did not want her to undergo chemotherapy for religious reasons. Specifically, the case worker's progress notes contained the following statements:

2–26–91 Telephone call to Tana Wheat, social worker

Tana Wheat stated that she is a social worker in the Oncology Department at Texas Children's hospital. She stated the following to this worker: ... The religion of the family is keeping them from seeking the type of treatment they need and the alternative treatment they have decided to use is not part of the POG.... POG is a

---

6. In their response to the defendants' motion for summary judgment, the Sacketts objected to all but six of these exhibits on the basis of hearsay. However, the Sacketts did not object to the defendants' affidavits, which contained most of the relevant information from the remaining exhibits in a condensed form. Further, to the extent that the defendants' remaining exhibits were offered to show the information upon which Marshall acted in order to demonstrate her good faith, they are not hearsay. *See Chandler v. Chandler,* 842 S.W.2d 829, 831 (Tex.App.—El Paso 1992, writ denied) (where issue is whether a party has acted in good faith, information on which he acted is not hearsay); *Butler v. Hide-A-Way Lake* *Club, Inc.,* 730 S.W.2d 405, 411 (Tex.App.—Eastland 1987, writ ref'd n.r.e.). Finally, we find no evidence in the record that shows that the Sacketts obtained a ruling from the trial court on their hearsay objection. *See Roberts v. Friendswood Dev. Co.,* 886 S.W.2d 363, 365 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (to preserve error for appellate review when objecting to form of summary judgment evidence, party must secure ruling on objections by the trial court). Therefore, we may consider these exhibits in determining whether the defendants sustained their burden of proof.

National Organization which determines which treatments are appropriate for which type of cancer.

. . . .

Dr. Boone stated that Dr. Streeter, in Indiana, is treating Sara [sic].... He mentioned that he believes the family wants the best for Sara [sic] but that he [Boone] has no confidence in Dr. Streeter. Dr. Boone said the family was referred to Dr. Streeter through Bill Gothard. This worker asked Dr. Boone who Bill Gothard was and he stated that he is a religious figure. He stated that Bill Gothard has decided which doctors are fit for the treatment of cancer. He said that the first three doctors Bill Gothard recommended to the family told the family to use the treatment as prescribed by Texas Children's Hospital. He said that the fourth doctor, Dr. Streeter, told them he would treat Sara [sic] in the manner that they wished. He said then Sara [sic] was brought to Indiana to begin treatment. He also said that Ms. Sackett [sic] sister works for Bill Gothard and that is how the family became involved with him.

Dr. Boone stated that the mother's family is against the chemotherapy [sic] as prescribed by Texas Children's Hospital for religious reasons. He stated that Mr. Sacketts' relatives want Sara [sic] to be treated by Dr. Hurwitz.

2–28–91 Telephone call from Lee Sackett [brother of Steve Sackett]

Mr. Sackett stated that Olga Sackett has a sister by the name of Isabelle Langdert, who works for Bill Gothard. He stated that Bill Gothard is a member of the Baptist Church and he runs a Christian Organization. He stated that his brother told him that Bill Gothard feels that any type of infusion is against God's will. He also said that Isabelle has great influence on the family's decision ... Mr. Sackett stated that the information that he has received is that Sara [sic] has been taken to Indiana to be treated for her cancer through diet and small amounts of chemotherapy [sic].

He also stated that he has received information that this can be worse than not getting any type of treatment because her resistance to chemotherapy will build up and the cancer will return. He stated he feels that the family is listening to one man's opinion to what God wants for the family. He stated that this man's opinion is Bill Gothard. Mr. Sackett also stated that his brother Steve told him that if this treatment does not work out and Sara [sic] dies that it is God's will. He stated that he will continue to contact this worker with any information that he has with regards to the family.

The manual detailing HCCPS' intake and investigation procedures states the following rule for investigating claims of medical neglect because of religious beliefs:

CPS investigates allegations of lack of medical care because of religious beliefs if the child's condition appears to involve medical neglect. A parent or guardian is not considered negligent if he fails to provide a child with specified medical treatment because of a legitimate practice of his religion. However, staff may still request a court order to provide medical services if the child's health requires it.

During the investigation, the worker must interview the parents and involved medical personnel to determine the nature and severity of the child's illness and possible alternatives to the recommended treatment. If more than one physician is available, the worker must secure a second medical opinion. The worker must try to obtain written medical statements describing the severity of the child's condition.

CPS must present the child's situation to the court if:

(1) the parents (or the child) continue to refuse medical treatment; and

(2) the physician's statements indicate that failure to seek, obtain, or follow through with the recommended medical treatment would

a. result in or present a substantial risk of death, disfigurement, or bodily injury ...

c. result in an immediate danger to the child's health or safety.

The Sackett case was referred to Marshall in late February 1991. Because the division had never dealt with a referral where a doctor alleged that a child was not receiving medical treatment necessary to save her life, Marshall said that she, with the help of her director and the legal department, decided to conduct an investigation to determine what type of treatment Sarah Sackett was receiving.

Mary Green was the case worker assigned to the investigation, and Marshall supervised the case and consulted with Green frequently. Marshall stated that she instructed Green to make the necessary contacts to determine what kind of medical care, if any, Sarah was receiving. The progress notes reflect that the following people were consulted during the investigation: (1) Mr. Sackett; (2) Dr. Hurwitz; (3) Cal Streeter, M.D., the physician in Indiana who treated Sarah with an alternative cancer protocol; (4) Dr. Boone, the Sacketts' family physician; and (5) unnamed doctors from M.D. Anderson Cancer Center. Green talked with Mr. Sackett in an attempt to find out what kind of treatment Sarah was receiving in Indiana, but Mr. Sackett refused to give this information. Marshall personally contacted Dr. Streeter and inquired about the specific treatment that Sarah was receiving. Marshall testified in deposition that Dr. Streeter told her that he had encouraged the Sacketts to get Sarah treated by a pediatric oncologist (which he was not), but he proceeded to treat Sarah when they refused to do so. Dr. Streeter also sent a copy of Sarah's treatment plan to Marshall; upon receiving the plan, Marshall had Green submit it to Dr. Hurwitz for his review.

Marshall said that Green informed her that Dr. Hurwitz did not approve of Sarah's medical treatment, and that doctors at M.D. Anderson concurred with Dr. Hurwitz' opinion. Marshall additionally received a letter from Streeter in which he advised her that he was no longer treating Sarah, and he recommended that she return to Texas for the treatment suggested by the doctors in Houston. After receiving this information and not having any input as to what was happening with Sarah from Mr. Sackett, Marshall decided that HCCPS should petition the court for a show cause hearing.

 Marshall stated in her affidavit that she acted in good faith and as a reasonably prudent program director would have acted under similar circumstances. This statement, by itself, is insufficient to support the defendants' contention that Marshall acted in good faith. Summary judgment may be based upon the uncontroverted testimonial evidence of an interested witness only if the evidence is clear, positive and direct, otherwise credible and free from inconsistencies, and could have been readily controverted. *Republic Nat'l Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986); TEX.R.CIV.P. 166a(c). However, the remainder of Marshall's affidavit and the remaining summary judgment evidence detailed Marshall's involvement in the Sackett case. An affidavit containing conclusory and subjective determinations of fact may nevertheless support a motion for summary judgment if the remaining statements contain sufficient factual information to sustain the movant's burden of proof. *General Prod. Co. v. Black Coral Inv.,* 715 S.W.2d 121, 123 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Along with the evidence in the case file described above, the defendants also submitted the affidavit of Elizabeth Scarborough, the lead program director with the Texas Department of Protective and Regulatory Services. In her affidavit, Scarborough stated that she reviewed Sarah Sackett's referral file, and specifically, Suzette Marshall's actions. Scarborough stated that Marshall's actions were reasonable and prudent, and had Scarborough been faced with the same or a similar situation, she would have acted in the same or a similar manner.

We now consider whether the defendants' summary judgment proof, taken alone, conclusively proved Marshall's official immunity

**934**

on all of the claims in the Sacketts' eighth amended petition. Uncontroverted evidence favoring the movant's position may be considered when determining whether the movant met his or her initial burden. TEX. R.CIV.P. 166a(b).

■ As noted, the Sacketts alleged that the defendants were negligent in not fulfilling their duty to adequately investigate the claims of neglect in violation of the Family Code, and in refusing to discontinue the investigation. The Family Code required HCCPS to conduct a thorough investigation of a report of neglect allegedly committed by a person responsible for Sarah's care, *i.e.*, her parents. Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex.Sess.Law Serv. 113, 262 (Vernon) (to be codified as TEX.FAM. CODE ANN. § 261.301(a)). Marshall directed this investigation, and the record shows that it was conducted in compliance with HCCPS's policy manual. Specifically, the summary judgment evidence shows that HCCPS consulted with Mr. Sackett and several doctors to determine the severity of Sarah's illness and possible treatment options. HCCPS also obtained a sworn medical statement from Dr. Hurwitz describing Sarah's condition and the necessity of chemotherapy to save her life. In light of established law, Scarborough's affidavit, and HCCPS's policy manual, a reasonable person in Marshall's position could have believed that the manner in which she directed the investigation was justified.

■ The Sacketts also alleged that the defendants negligently used file papers, specifically the petition seeking custody of Sarah, to harass the Sacketts and violate their state constitutional right to privacy. Although the trial court granted summary judgment in HCCPS's favor on these causes of action, the record shows that the court did not grant summary judgment in Marshall's favor. We therefore consider whether Marshall is entitled to official immunity against these causes of action.

According to HCCPS's policy manual, it had to present Sarah's situation to the court

if her parents continued to refuse medical treatment and a physician's statements indicated that the failure to obtain the recommended treatment would result in a substantial risk of death. The defendants' summary judgment evidence satisfied this requirement. However, we must also consider whether a reasonable person in Marshall's position could have believed that the facts of this case justified petitioning the court for managing conservatorship of Sarah. A governmental entity or authorized agency has general standing under the Family Code to file a suit affecting the parent-child relationship. Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex.Sess.Law Serv. 125 (Vernon) (to be codified as TEX.FAM.CODE ANN. § 102.003). Further, the code provides that a trial court may appoint a managing conservator other than the child's parent if the court finds that appointment of the parent would not be in the child's best interest because the appointment would significantly impair the child's physical health. Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex.Sess.Law Serv. 149 (Vernon) (to be codified as TEX.FAM.CODE ANN. § 153.131); *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex.1990). In light of established law, the evidence supports the conclusion that a reasonable person in Marshall's position could have believed that the facts of this case justified petitioning the court for Sarah's custody. *Chambers*, 883 S.W.2d at 656.

■ The Sacketts additionally asserted a cause of action under the Uniform Declaratory Judgments Act that the defendants violated the Sacketts' liberty interest and damaged their reputations by placing their names in the HCCPS central registry. The Sacketts requested attorney's fees under this cause of action. Although HCCPS obtained summary judgment on this cause of action, the record also shows that the court did not grant summary judgment in Marshall's favor. However, the defendants' summary judgment evidence established that Marshall acted with objective good faith. The record contains an HCCPS "intake and CANRIS report" which shows that Green requested that the Sack-

etts' names not be placed in the HCCPS central registry. Further, Marshall testified during deposition that "to her knowledge" the Sacketts' names were not placed in the HCCPS central registry. This testimony does not amount to a denial that the names were placed in the HCCPS central registry, but rather indicates only that to Marshall's knowledge the names were not placed there.[7] There is no evidence in the record that conclusively establishes that the Sacketts' names did not go into the HCCPS central registry.

We hold that the defendants' presented sufficient summary judgment proof to entitle Marshall to official immunity on all of the causes of action that the Sacketts asserted in their eighth amended petition. The evidence shows that a reasonable person in Marshall's position could have believed that her acts were necessary to save Sarah's life.

### B. Sufficiency of the Sacketts' Summary Judgment Proof

We now consider whether the Sacketts raised any material fact issues precluding the entry of summary judgment in favor of the defendants. The Sacketts submitted as summary judgment evidence an amended affidavit of Reynolds,[8] two deposition excerpts from Marshall's deposition, and the petition that HCCPS filed in the underlying lawsuit. We note that the Sacketts did not produce summary judgment evidence that Marshall placed their names in HCCPS' central registry, nor did they produce any evidence to show that Marshall would have acted in bad faith had she done so. However, Reynolds stated in his affidavit that he believed that

HCCPS petitioned for custody of Sarah in bad faith, and he had two reasons to support his belief. Reynolds first stated that, from the petition filed by HCCPS, along with the actions, arguments, negotiations, and demeanor of the HCCPS representatives and Dr. Hurwitz, it was clear to him that HCCPS filed the petition in the underlying suit with the intent of taking Sarah from her parents. Reynolds referred to a portion of Marshall's deposition in which she testified that she never intended to take Sarah, and her primary goal was to see that Sarah received the treatment she needed for her disease. The Sacketts attached this portion of Marshall's deposition as part of their summary judgment evidence.

Reynolds further stated that he knew that one of the reasons that the defendants petitioned for custody of Sarah was that the Sacketts were "deeply religious people who home schooled their children." The Sacketts attached a deposition excerpt in which Marshall acknowledged that she had observed the progress notes in Sarah's file that reflected that the Sacketts chose an alternative cancer protocol for religious reasons. As noted, the progress notes to which Marshall referred were submitted by the defendants in support of their motion for summary judgment. Marshall denied that HCCPS considered the Sacketts' religious beliefs as a reason for seeking custody of their daughter.

The Sacketts contend that their summary judgment evidence raised two material fact issues concerning the "good faith" element of Marshall's official immunity defense. Specifically, they note the discrepancy between Reynolds' affidavit and Marshall's deposition

7. The dissent argues that Marshall affirmatively denied that the Sacketts' names were placed in the HCCPS central registry, however we disagree with the dissent's interpretation of the facts.

8. The original Reynolds affidavit that the Sacketts filed with their response did not contain a statement that Reynolds had personal knowledge of the statements contained therein and that they were true and correct. The defendants objected to the affidavit, partially on the grounds that it did not contain the clause. The Sacketts added the missing clause in an amended affidavit. The defendants contend that we cannot consider this

affidavit because it was filed late. We disagree. An adverse party to a motion for summary judgment may file opposing affidavits without leave of court not later than seven days prior to the day of the hearing. Tex.R.Civ.P. 166a(b). The amended Reynolds affidavit was filed on November 2, 1994, and the trial court heard the motion for summary judgment on November 10, 1994. This was more than seven days prior to the summary judgment hearing. Therefore, we may consider the amended Reynolds affidavit as summary judgment evidence.

**936**

testimony concerning whether she or HCCPS filed the petition with the intent of taking Sarah from her parents. Further, they point to inconsistencies between Reynolds's affidavit and Marshall's deposition testimony as to whether religious beliefs were a factor in prosecuting the custody case.

■ The statements in Reynolds's affidavit are conclusory in nature. It is well settled that conclusory statements in an affidavit unsupported by facts are insufficient to raise a fact issue to prevent the granting of summary judgment. Texas Div.-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994); Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex.1984); Dyson Descendant Corp. v. Sonat Exploration Co., 861 S.W.2d 942, 948 (Tex.App.—Houston [1st Dist.] 1993, no writ). Reynolds does not give any factual details regarding the defendants' actions, arguments, negotiations, and demeanor upon which he bases his belief that HCCPS petitioned for the custody of Sarah in bad faith. Further, Reynolds does not state any underlying facts to support his conclusion that the defendants petitioned for custody of Sarah because the Sacketts were "deeply religious people who home schooled their children."

■ Additionally, the real issue in this case is not whether HCCPS intended to take custody of Sarah from her parents. The relevant inquiry is whether, in light of existing law, a reasonable child protective services official could have believed that Marshall's actions were justified under the facts of this case. See Chambers, 883 S.W.2d at 656–57. The statements in Reynolds's affidavit relate to the defendants' subjective motives for seeking custody of Sarah. A motion for summary judgment cannot be denied based upon the existence of an immaterial fact issue. Harris County v. Ochoa, 881 S.W.2d 884, 889 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

Regardless of Marshall's subjective motives, once the defendants met their burden of proof, the Sacketts had the burden of producing summary judgment evidence that

no reasonable person in Marshall's position could have thought that her acts were justified based upon the facts before her. See Chambers, 883 S.W.2d at 656. The Sacketts did not satisfy their burden. We conclude that their summary judgment proof did not raise a fact issue concerning objective good faith.

■ We hold that the defendants conclusively proved Marshall's official immunity. Therefore, HCCPS was also entitled to assert its affirmative defense of sovereign immunity based upon Marshall's official immunity. We sustain the defendants' three points of error.

We reverse the judgment of the trial court and render judgment that the Sacketts take nothing against the defendants on all of the claims in the Sacketts' eighth amended petition. We do not address the additional cause of action that the Sacketts added in their ninth amended petition for interference with their right of conscience in matters of religion. TEX. CONST. art. I, § 6.

HEDGES, J., dissents.

HEDGES, Justice, dissenting.

I dissent from that portion of the majority's opinion that renders judgment for Suzette Marshall on the Sacketts' claim against her pursuant to the Uniform Declaratory Judgments Act for violation of their liberty interests by placing the Sacketts' names in the HCCPS central registry.

Official immunity is the only ground on which we may reverse the trial court's denial of summary judgment on the Sacketts' causes of action and render judgment that the Sacketts take nothing. See TEX.CIV. PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1995). To support its assertion that Marshall was officially immune as to the Sacketts' "liberty interest" cause of action, the majority points to the defendants' summary judgment evidence that Marshall requested that the Sacketts' names not be placed in the HCCPS central registry. Mar-

---

shall is not defending on the basis of official immunity; she is denying that she did the act in the first place. We cannot consider this issue because it is outside the permissible scope of this appeal. *Boozier v. Hambrick*, 846 S.W.2d 593, 596 (Tex.App.—Houston [1st Dist.] 1993, no writ).

I would affirm the summary judgment in favor of HCCPS, affirm the summary judgment in favor of Marshall as to all causes of action except the claim for violation of "liberty interest," and reverse and remand as to that claim.