ESCO OIL & GAS, INC., Appellant,

v.

SOONER PIPE & SUPPLY CORP., Packard Pipe Terminals, Inc., Packard Truck Lines, Inc., The Babcock & Wilcox Co., A–Z Terminal Corp., & Hydril Co., Appellees.

No. 01–96–01286–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 22, 1998.

Rehearing Overruled March 25, 1998.

Steve Rosenblatt, Houston, for Appellant.

Richard Schwartz, Diane M. Guariglia, William K. Luyties, L. Keith Slade, Ronald Lee White, Walter Joseph Gallant, Houston, for Appellees.

Before O'CONNOR, MIRABAL and NUCHIA, JJ.

## OPINION

O'CONNOR, Justice.

The most significant issue in this case is whether the doctrine of res ipsa loquitur applies when a plaintiff sues multiple defendants claiming the negligence of one of them caused the plaintiff's injury. We hold that the doctrine of res ipsa loquitur does not apply when one of multiple defendants may be responsible for the injury, independent of the other defendants.

Esco Oil & Gas, Inc., plaintiff below, appeals the granting of summary judgment for the defendants. We reverse.

### Facts

In 1988, defendant Sooner Pipe & Supply Corp. (Sooner Supply) bought L–80 low-nickel tubing from defendant Babcock & Wilcox

Co. (B & W). Pipe classified as L–80 tubing has a nickel content less than 0.25%. The nickel content of the pipe purchased by Sooner Supply under purchase orders TUB–92037 and TUB–92038, was between 0.11 and 0.15%. Sooner Supply shipped 1834 joints of the pipe to defendant A–Z Terminal Corp. (A–Z Terminal) in February of 1988. A–Z Terminal stored it for several years, until late 1991, when it shipped 500 joints to defendant Hydril Co. (Hydril). Hydril had possession of the pipe for about a month in October 1991, while it threaded the pipe with CS–CB threads. In November 1991, defendant Packard Truck Lines, Inc. (Packard Truck) shipped the pipe to defendant Packard Pipe Terminals, Inc. (Packard Terminal) for storage. In 1992, the plaintiff purchased from Sooner Supply 118 joints of low-nickel tubing for use in the workover of a sour gas well. Packard Truck shipped the order to the plaintiff from Packard Terminal in May 1992.

The pipe that was delivered to the plaintiff was in the possession of the defendants in the following order:

| Sooner Supply | B & W | A–Z Terminal | Hydril | Packard Truck | Packard Terminal | Packard Truck |
|---|---|---|---|---|---|---|
| ordered pipe from B & W in 1988 | manufactured pipe & delivered it to A–Z Terminal in 1988 | stored pipe from 1988 to 1991; shipped it to Hydril for threading | threaded pipe & sent it to Packard Terminal in 1991 | delivered pipe to Packard Terminal in 1991 | stored pipe from 1991 to 1992 | delivered pipe for Sooner Supply to Esco in 1992 |

The plaintiff used the pipe from Sooner Supply to workover sour gas well ATIC 31–6 in Escambia County, Alabama. Before the new pipe was delivered, Tom Moore, an employee of the plaintiff, supervised the removal of all the old pipe from the well, which was sorted into pipe that would be reused in the workover and pipe that was to be discarded. When the pipe from Sooner Supply was delivered to Esco, Moore received the pipe and supervised its storage separate from other pipe, and later, its placement in the well.

The new pipe from Sooner Supply was used as the top 80 joints and bottom 30 joints in the pipe string. The remaining 370 middle joints were the old, reused pipe. The plaintiff kept a record of where the new pipe was placed in the pipe string. The plaintiff claims the new pipe from Sooner Supply was kept entirely separate from any other pipe and that the reusable pipe was segregated entirely from the pipe that was to be discarded.

When ATIC 31–6 developed problems, the pipe string was pulled from the well and inspected by John Young and Cletus Brewer, oilfield consultants. Joints two and six were leaking and were cut from the string and sent for testing to Houston. Upon testing by a metallurgical consultant, T.V. Bruno, it was discovered that the joints had a high-nickel content (between 8 or 9%), making them unsuitable for use with sour gas. The failed joints were threaded with a HOB cut thread, not a CS–CB thread.

The plaintiff sued the defendants, claiming that unsuitable high-nickel joints were mixed into the load of new pipe somewhere along the chain of distribution. The plaintiff sued the six defendants for negligence, breach of warranty, violations of the Texas Deceptive Trade Practices Act (DTPA),[1] and common-law fraud. In addition, the plaintiff sued Sooner Supply for breach of contract. When summary judgment was granted, the plaintiff was in the process of drafting an amended petition that dropped the fraud claims against all the defendants, and dropped the breach of warranty and DTPA claims against all defendants except Sooner Supply. In its appeal, the plaintiff only addresses the causes of action that would have remained after it filed its amended petition—negligence by all appellees, and breach of warranty, breach of contract, and DTPA violations by Sooner Supply.

B & W filed for summary judgment, and the remaining defendants filed a separate motion for summary judgment. The plaintiff filed a response, alleging that, because each

1. TEX.BUS. & COM.CODE §§ 17.41–17.63 (1997).

of the defendants (except Sooner Supply) had custody of the pipe at some point in the chain, all defendants were negligent based on res ipsa loquitur. The trial court granted both of the defendants' motions. The plaintiff appeals, making two arguments: (1) plaintiff is entitled to rely on the doctrine of res ipsa loquitur to establish negligence on the part of the defendants; and (2) the defendants did not prove they were entitled to summary judgment.

## Standard of Review

To succeed on a motion for summary judgment, the movant must prove it is entitled to judgment as a matter of law and there are no genuine issues of material fact. TEX.R.CIV.P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Mayer v. State Farm Mut. Auto. Ins. Co.*, 870 S.W.2d 623, 624 (Tex.App.—Houston [1st Dist.] 1994, no writ). A defendant seeking summary judgment must disprove an essential element of the plaintiff's cause of action. *Lear Siegler*, 819 S.W.2d at 471. On appeal, we resolve all doubts against the movant and view the evidence in the light most favorable to the nonmovant. *Id.; Marshall v. Sackett*, 907 S.W.2d 925, 930 (Tex.App.—Houston [1st Dist.] 1995, no writ).

## Res Ipsa Loquitur

The plaintiff claims the trial court erred in granting summary judgment because the defendants did not prove they were not negligent. The plaintiff argues that one of the defendants must have been negligent because there is no other explanation for how the wrong pipe was used in the pipe stream. The plaintiff contends it can rely on the doctrine of res ipsa loquitur to establish the negligence of the defendants. We disagree.

Res ipsa loquitur is Latin for "the thing speaks for itself." *Marathon Oil Co. v. Sterner*, 632 S.W.2d 571, 573 (Tex.1982). To establish a claim by res ipsa loquitur, a plaintiff must prove (1) an accident of this character does not ordinarily occur in the absence of negligence and (2) the instrument which caused the accident was under the exclusive management and control of the defendant. *Id.; Rogers v. Duke*, 766 S.W.2d 547, 548

(Tex.App.—Houston [1st Dist.] 1989, no writ).

The first factor is satisfied in this case, the second is not. The doctrine of res ipsa loquitur is not available to fix responsibility when any one of multiple defendants, wholly independent of each other, might have been responsible for the injury. *Beakley v. Houston Oil & Minerals Corp.*, 600 S.W.2d 396, 397 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.). *See also* 65A C.J.S. *Negligence* § 220.14 (1966); Joan Teshima, Annotation, *Applicability of Res Ipsa in Cases of Multiple, Non–Medical Defendants—Modern Status*, 59 A.L.R.4th 201, 222–23, § 7 (1988); E.H. Schopler, Annotation, *Applicability of Res Ipsa Loquitur in Case of Multiple Defendants*, 38 A.L.R.2d 905, 908–09, § 3[a] (1954); WILLIAM L. PROSSER, LAW OF TORTS, § 39, at 221 (4th ed.1971); 57B AM.JUR.2D *Negligence* §§ 1855, 1870, 1871 (1989). By contrast, the doctrine can be used to fix responsibility against multiple defendants when they had joint control of the instrumentality causing the injury. *See Bond v. Otis Elevator Co.*, 388 S.W.2d 681, 685 (Tex.1965) (res ipsa was applicable against landlord and elevator company who had joint control of elevator). None of the defendants in this case had joint control over the pipe.

We hold that the plaintiff was not entitled to rely on the doctrine of res ipsa loquitur to defeat the motion for summary judgment.

## Negligence

The plaintiff claims the trial court erred in granting summary judgment because the defendants did not disprove an essential element of the plaintiff's claim.

The defendants claim the testimony of Tom Moore, the plaintiff's witness, establishes that all the pipe received by the plaintiff was CS–CB threaded. This testimony, they argue, establishes that the pipe received by the plaintiff could not have been the failed pipe because the failed, high-nickel pipe was not CS–CB threaded. Any error, therefore, must have occurred after the plaintiff received the correct pipe. Sooner Supply argues that because the plaintiff received the correct order, the plaintiff's causes of action

against Sooner Supply and the defendants must fail. The plaintiff contends the defendants misstate Moore's testimony and that each piece of tubing was not individually inspected. The plaintiff claims a question of fact remains as to whether the failed pipe was sent to the plaintiff by the defendants.

Moore was familiar with CS–CB threads and stated he knew the feel of CS–CB rings and the new tubing was CS–CB type pipe. He stated that each joint was measured as it came off the delivery truck but that not every piece was turned to verify the L–80 markings. When asked how many joints he checked for CS–CB threads, he explained that, in measuring the pieces, protectors were removed from the ends of the pipe. Moore or the roughneck holding the piece could see the box on the end of the pipe, inside of which was the CS–CB ring. He stated that every now and then he would have the roughneck rub his finger inside of the box to feel for the CS–CB ring. It appears from a close reading of Moore's testimony that each and every joint was not checked for the CS–CB ring.

### Babcock & Wilcox

The plaintiff argues that B & W could have introduced the high-nickel joints into the chain of distribution through B & W's practice of accepting returned pipe from its customers from time to time.

In its motion for summary judgment, B & W claimed it did not make the high-nickel pipe. B & W offered an affidavit by Bill Leaf, who was familiar with quality control, customer service, and inspection. Leaf stated he was personally familiar with B & W's procedures for acceptance of returned pipe.[2] He stated B & W only accepted B & W pipe from its customers and any returned pipe was either sold as scrap with the threads removed, or melted down. B & W also offered the affidavit of Frank Bair, who worked for B & W for 47 years as an inspection supervisor and as foreman of the inspection supervisors. He testified that, as a result of the B & W manufacturing process, B & W pipe has distinctive ribs inside the pipe, which can be felt by placing a finger inside

the pipe. The failed pipe did not have the internal ribs of B & W pipe.

The plaintiff insists the issue is not whether the failed pipe was made by B & W. Instead, the plaintiff's theory is that B & W could have accepted non-B & W, high-nickel pipe in error, and mixed it into Sooner Supply's order.

### Hydril

The pipe that failed was threaded with a HOB cut. On summary judgment, the defendants produced an affidavit by Larry Pertuit, manager of the Hydril facility which threaded the pipe. Pertuit testified Hydril had not used HOB threads since 1982 and HOB threaded pipe had not been at its facilities since 1982. Therefore, Hydril argues, the failed pipe was not introduced at its facility. Pertuit also stated the TUB–92037 pipe was received on October 7, 1991, checked to be sure it matched the order and shipping documents, and marked with Hydril shop numbers. The Sooner Supply pipe was kept separate from other similar pipe and employees handling the Sooner Supply pipe and Hydril's quality control people verified that the right pipe was threaded. Pertuit stated Hydril and Packard employees inspected the pipe as it was given to Packard to verify it was the same pipe received from Sooner Supply.

The plaintiff responds that Hydril's practice of receiving old pipe from its customers could have resulted in the introduction of high-nickel, HOB cut pipes into the stream of commerce. Regardless of whether the high-nickel pipe was threaded by Hydril, the plaintiff argues, an error on Hydril's part could have led to the introduction of high-nickel pipe into the plaintiff's order.

### A–Z Terminal

A–Z Terminal produced business records that reflect the TUB–92037 joints were checked, tallied, and stenciled with identification numbers in January 1991. The records also show the pipe shipped from A–Z Termi-

---

2. B & W sold its Tubular Productions Division in 1990 and no longer produces pipe.

nal was stenciled with the TUB–92037 markings.

The plaintiff responds that A–Z did not prove (1) high-nickel joints were not mixed in with the low-nickel pipe, (2) each pipe from TUB–92037 was stenciled, or (3) stenciling would still be visible on the pipe after it was removed from the well. The plaintiff points to some of A–Z Terminal's documentation indicating an error in stenciling TUB–92037's identification marking to show errors could have occurred. The description of the 1,834 joints was changed from 1604 TUB–92037, with the balance "mixed TUB numbers," to 1753 TUB–92037 and 81 TUB–92038. The plaintiff argues A–Z Terminal's document does not satisfy A–Z Terminal's summary judgment burden of proving there was no error in handling the pipe.

### Packard Truck & Packard Terminal

Packard Truck claims it verified the TUB–92037 stencil on each piece of pipe when the pipe was loaded at Hydril's facility and when it was stored at Packard Terminal. Packard Truck also claims the stencils on each joint were confirmed again when the pipe was shipped to the plaintiff. Clairborne Perrilliat, part owner and chief executive officer of Packard Truck, testified about the procedures for picking up and delivering pipe. He testified that drivers for Packard Truck match the description of the pipe to the load actually received. He also testified each length of pipe is re-checked when it is placed on a storage rack. Perrilliat stated a Sooner Supply superintendent was present at Packard Terminal and oversaw the placement and moving of Sooner Supply materials. Finally, Perrilliat testified that, upon shipping the pipe out, it would have been again checked for TUB numbers.

The plaintiff argues Perrilliat did not have first-hand knowledge of the handling of the pipe. The plaintiff claims Packard, like Hydril and B & W, through its practice of accepting old pipe from its customers, could have mixed the high-nickel pipe with the plaintiff's order.

### Summary

As stated earlier, we are required to resolve all doubts against the movant and view the evidence in the light most favorable to the nonmovant. *Lear Siegler*, 819 S.W.2d at 471; *Marshall*, 907 S.W.2d at 930. When the defendant produces sufficient evidence to establish its right to summary judgment, the plaintiff must produce contradictory proof to avoid summary judgment.[3] *Marshall*, 907 S.W.2d at 930.

In this case, all the parties provided summary judgment evidence to support their claims that they were not negligent. The plaintiff offered proof that it placed the new pipe on the top 80 joints of the pipe stream; and that the failed pipes, joints number two and six, were the new pipe. By comparison, the defendants collectively claim they did not make a mistake in the four years they had the pipe, during which it was ordered by Sooner Supply, manufactured by B & W, shipped to A–Z Terminal, stored by A–Z Terminal, shipped to Hydril, threaded by Hydril, shipped by Packard Truck to Packard Terminal, stored by Packard Terminal, and ultimately shipped by Packard Truck to the plaintiff.

Assuming the plaintiff's proof as true, which we must, we find there is a fact question whether the defendants were negligent. We sustain point of error one as it relates to negligence claims against all the defendants.

### Remaining Claims Against Sooner Supply

We also sustain point of error one as it relates to the remaining claims against Sooner Supply for breach of warranty, breach of contract, and DTPA claims. The evidence produced at the summary judgment proceeding does not disprove those claims as a matter of law.

---

3. The motions for summary judgment in this case were filed before the Texas Supreme Court adopted Tex.R.Civ.P. 166a(i), the no-evidence motion for summary judgment. If the motions in this case had been filed under new the Rule 166a(i), the plaintiff as the nonmovant would have had the burden to raise a triable issue on each element essential to the plaintiff's case against each defendant. Under the procedure used here, the burden was on the defendant to show the plaintiff had no cause of action as a matter of law. Tex.R.Civ.P. 166a(a–c).

We reverse and remand the case to the trial court for further proceedings.