Opinion issued April 19, 2007

 













In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00555-CV






ASPENWOOD APARTMENT CORP. AND JACK YETIV, Appellants


V.


BEATRICE LINK AND HELEN HUEY, Appellees






On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 1994-59707






MEMORANDUM OPINION


 Appellants, Aspenwood Apartment Corporation and Jack Yetiv (collectively
"Yetiv") filed claims against appellees, Beatrice Link and Helen Huey, alleging
various constitutional and common law violations. Yetiv's claims against both Link
and Huey were disposed of pre-trial when Huey was dismissed by the trial court
pursuant to her special exceptions and Link was granted summary judgment. In two
issues, Yetiv argues that the trial court erred in (1) sustaining Huey's special
exceptions and dismissing his case pursuant thereto and (2) granting Link's motion
for summary judgment. We affirm in part and reverse and remand in part.

Background

 According to the pleadings, Yetiv is the primary secured-lienholder of
apartment properties owned by Aspenwood Apartment Corporation ("AAC"). The
City of Houston ("the City") filed a lawsuit seeking to enjoin Yetiv from making
repairs to certain of those properties without the necessary building permits. Yetiv
counterclaimed against the City, joining Huey, a former City Council member, and
Link, Assistant Director of Neighborhood Protection, as counterdefendants. (1) In his
counterclaim, Yetiv alleged malicious prosecution and abuse of process; tortious
interference with contracts; and section 1983 claims for unconstitutional takings of
property, retaliation for asserting First Amendment rights, illegal searches, and due
process violations. In addition, he requested a declaratory judgment for "takings" and
due course of law violations under the Texas Constitution caused by improperly
withholding permits. Yetiv sought actual damages, punitive damages, attorneys fees,
and injunctive relief. 

 The trial court granted summary judgment for Huey on all claims asserted
against her individually and for Link on all state-law claims asserted against her
individually. Yetiv non-suited his federal-law claims against Link and proceeded to
trial against the City only. The jury was charged only on Yetiv's claim against the
City for First Amendment retaliation, illegal searches, and permit withholding. The
jury found that the City: 

1. did not retaliate against Yetiv for asserting his First Amendment
rights;


2. did search the apartments without a search warrant or beyond the
scope of any warrant; and

 

3. did arbitrarily or capriciously deny or withhold permits for work
on the apartments. 


 The City appealed the jury's verdict, and Yetiv appealed the grant of summary
judgment in favor of Huey and Link. This Court (1) reversed the verdict against the
City and rendered judgment that Yetiv take nothing on his claims and (2) reversed the
summary judgments in favor of Huey and Link and remanded the issues for trial. City
of Houston v. Aspenwood Apartment Corp., No. 01-97-01378-CV, 1999 WL 681939
* 1 (Tex. App.--Houston [1st Dist.] Aug. 27, 1999). 

 On remand, Huey specially excepted to Yetiv's pleadings. In her special
exceptions, she argued that, because Yetiv was collaterally estopped from asserting
his claims by both the jury's verdict and this Court's opinion, he failed to state a
viable cause of action. The trial court sustained Huey's special exceptions and
ordered Yetiv to replead within 30 days. Yetiv did not replead, and Huey filed a
motion to dismiss based on his failure to do so. Pursuant to that motion, the trial
court dismissed Yetiv's case against Huey. 

 Link moved for summary judgment on the grounds that she had conclusively
established each of the elements of her affirmative defenses under the Texas Tort
Claims Act, the statute of limitations, and the doctrines of collateral estoppel and res
judicata. Without specifying its reasons, the trial court granted Link's summary
judgment motion and rendered a final judgment that Yetiv take nothing on his claims
against her. (2) 

 Yetiv now appeals the trial court's decision both (1) to sustain Huey's special
exceptions and dismiss the case against her and (2) to grant Link's motion for
summary judgment. 

Huey's Special Exceptions - Collateral Estoppel In his first issue, Yetiv argues that the trial court erred in granting Huey's
special exceptions and motion to dismiss. Specifically, Yetiv argues that, because an
opinion of this Court previously held that a fact issue existed as to Huey's individual
liability, it was error for the trial court to grant her special exceptions on the grounds
that Yetiv was collaterally estopped from asserting his claims by the holdings in that
same appellate opinion. We disagree in part.

A. Standard of Review

 A special exception is a proper method to determine whether a plaintiff has
pleaded a cause of action. See Tex. R. Civ. P. 91; Alpert v. Crain, Caton, & James,
P.C., 178 S.W.3d 398, 405 (Tex. App.--Houston [1st Dist.] 2005, pet. denied). 
When special exceptions are sustained, the pleader may either amend the petition or
refuse to amend and challenge the ruling on appeal. Alpert, 178 S.W.3d at 405.

 We review a trial court's dismissal of a case upon special exceptions for failure
to state a cause of action as an issue of law, using a de novo standard of review. Id. 
We accept all of the plaintiff's material factual allegations and all reasonable
inferences from those allegations as true. Sorokolit v. Rhodes, 889 S.W.2d 239, 240
(Tex. 1994). 

B. Analysis

 Huey specially excepted to Yetiv's causes of action on the grounds that he was
collaterally estopped from asserting his claims against her because the issues set forth
in the pleadings were fully and fairly litigated in his previous action against the City.
The doctrine of collateral estoppel, or issue preclusion, prevents the relitigation of
particular issues when (1) the facts sought to be litigated in the second action were
fully and fairly litigated in the first action, (2) those facts were essential to the
judgment in the first action, and (3) the parties were cast as adversaries in the first
action. Turnage v. JPI Multifamily, Inc., 64 S.W.3d 614, 617 (Tex. App.--Houston
[1st Dist.] 2001, no pet.) (citing Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796,
801 (Tex. 1994)). Because Yetiv and Huey have been cast as adversaries throughout
the progression of this case, the third element of the collateral estoppel doctrine is
satisfied, and we examine the pleadings to determine whether the facts sought to be
litigated thereunder (1) were fully and fairly litigated in Yetiv's action against the
City and (2) were essential to the judgment in that action. 

 1. Section 1983 Claims

 Under section 1983, Yetiv asserted claims against Huey for unconstitutional
"taking" of his property, retaliation for asserting First Amendment rights, illegal
searches, and due process violations for arbitrarily withholding building permits. To
state a claim for relief in an action brought under section 1983, Yetiv must establish
that he was deprived of a right secured by the Constitution or laws of the United
States, and that the alleged deprivation was committed "under color of state law." (3) 
42 U.S.C. § 1983 (2000); Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119
S. Ct. 977, 985 (1999). Like the state-action requirement of the Fourteenth
Amendment, the "under color of state law" element of section 1983 excludes from its
reach "merely private conduct, no matter how discriminatory or wrongful." Sullivan, 
526 U.S. at 50, 119 S. Ct. at 985. Thus, conduct allegedly causing the deprivation of
a constitutional right must be fairly attributable to the State. See Lugar v. Edmondson
Oil Co., Inc., 457 U.S. 922, 936-37, 102 S. Ct. 2744, 2753-54 (1982). In
determining the question of fair attribution, (1) the deprivation must be caused by the
exercise of some right or privilege created by the State or by a rule of conduct
imposed by it or by a person for whom it is responsible, and (2) the party charged
with the deprivation must be a person who may fairly be said to be a state actor. Id. 

 The following wrongful conduct was alleged by Yetiv against Huey in her
individual capacity: campaigning on promises to gentrify the residential district in
which the apartments at issue were located, encouraging neighbors living near the
apartment to secretly videotape the properties, and misrepresenting information to
City Council concerning the status of the apartments. Assuming this conduct could
be shown to result in the deprivation of constitutional rights, Yetiv was required to
show that Huey's actions were taken "under color of state law" in order to prevail. 
Sullivan, 526 U.S. at 50, 119 S. Ct. at 985. Yetiv's pleadings further alleged that the
City, through the actions of Link, Huey, and the City Council, adopted or expressly
ratified several unconstitutional policies--namely, policies to (1) demolish low-income housing, (2) wrongfully withhold building and repair permits, and (3) allow
inspectors to illegally search Houston residents' housing. In the alternative, he
alleged that City employees operated under a persistent, widespread, permanent, and
well-settled custom of improperly withholding permits and illegally searching low-income housing. 

 The facts surrounding these alleged policies and customs were fully litigated
in Yetiv's action against the City. There, the jury found the City liable on the
grounds that it had illegally searched Yetiv's properties and had arbitrarily and
capriciously withheld building permits. However, this Court reversed those findings
and held, on appeal, that (1) there was no evidence that "Houston City Council
executed a policy statement, ordinance, regulation or decision to demolish or illegally
search low-income housing or withhold permits" and (2) there was no evidence "of
a persistent, widespread, permanent, or well-settled custom or usage to demolish or
illegally search low-income housing or withhold building permits . . . ." City of
Houston v. Aspenwood Apartment Corp., No. 01-97-01378-CV, 1999 WL 681939,
at * 7, 12 (Tex. App.--Houston [1st Dist.] Aug. 27, 1999, pet. denied). This Court's
determination of the issues was essential to the judgment in Yetiv's action against the
City. Relitigation of these same issues would be necessary in Yetiv's current action
against Huey in order to determine whether her actions could be fairly attributed to
the City so that it may be said that she was acting "under color of state law." As a
result, Yetiv is collaterally estopped from relitigating these issues in the proceedings
against Huey. See Turnage, 64 S.W.3d at 617. 

 Because issues necessary to the resolution of Yetiv's claims against Huey were
fully and fairly litigated in Yetiv's previous action against the City, we conclude that
Yetiv was collaterally estopped from asserting his section 1983 claims, as pleaded,
against Huey. The trial court, therefore, did not err in granting Huey's special
exceptions. We further conclude that, because Yetiv failed to replead his claims and
allege conduct separate and apart from the issues already litigated against the City,
the trial court did not err in dismissing the section 1983 claims against Huey.

 Accordingly, we overrule Yetiv's first issue with respect to his section 1983
claims against Huey.

 2. State Law Claims

 Yetiv's pleadings allege an unlawful taking of property and the deprivation of
due process property rights under the Texas Constitution. Tex. Const. art. I, §§ 17,
19. Huey specially excepted to these claims on the grounds that this Court 

decided that [Yetiv] did not suffer a constitutional deprivation as a result
of conduct attributable to the legislative body of the City of Houston or
through its ratification of conduct by employees; therefore, without
specific pleadings describing a taking by withholding City of Houston
building permits involving [the property in question], [Huey] cannot
adequately prepare a defense or assess her liability and a special
exception should be granted. Like the "under color of state law" requirement in section 1983 claims, to
prevail on a theory of unconstitutional taking under the Texas Constitution, Yetiv
must show that Huey was acting "with authority or color of authority." See Steele v.
City of Houston, 603 S.W.2d 786, 791-92 (Tex. 1980). As discussed previously, this
Court determined that (1) there was no evidence that "Houston City Council executed
a policy statement, ordinance, regulation or decision to demolish or illegally search
low-income housing or withhold permits" and (2) there was no evidence "of a
persistent, widespread, permanent, or well-settled custom or usage to demolish or
illegally search low-income housing or withhold building permits . . . ." Aspenwood
Apartment Corp., 1999 WL 681939, at * 7, 12. These determinations were essential
to the judgment in Yetiv's action against the City, and relitigation of these same
issues would be necessary in Yetiv's current action against Huey in order to
determine whether Huey had authority or the color of authority to act. As a result,
Yetiv is collaterally estopped from relitigating these issues in the proceedings against
Huey, and the trial court did not error in sustaining Huey's special exceptions. See
Turnage, 64 S.W.3d at 617. Because Yetiv failed to replead his claims and allege
conduct separate and apart from the issues already litigated against the City, the trial
court did not err in dismissing the his state constitutional claims against Huey.

 Accordingly, we overrule Yetiv's first issue with respect to his state
constitutional claims. 3. Intentional Tort Claims

 Yetiv's pleadings assert claims against Huey for tortious interference with a
contract, malicious prosecution, and abuse of process. Huey's special exceptions to
these claims stated that, 

[s]ince [this Court] concluded that City of Houston decisions leading to
search warrants and citations involving [the property in question], as
well as building permits, were not based on inappropriate decisions of
Beatrice Link, the Houston City Council [Defendant Huey] and/or
through a pattern, practice, policy or custom in the City . . ., unless the
current litigation of Defendant Huey's activities involving Yetiv/AAC
involve new issues, collateral estoppel appears to bar this suit; therefore
without specific pleadings describing building permit decisions
involving [the property in question], Defendant Huey cannot adequately
prepare a defense or assess or [sic] her liability . . . .


We consider each of Yetiv's individual tort claims separately to determine whether
the doctrine of collateral estoppel, as set-forth previously, applies. 

 a. Tortious Interference with Prospective Contracts

 The elements of a cause of action for tortious interference with a prospective
contract are: (1) there was a reasonable probability the plaintiff would have entered
into a contractual relationship, (2) the defendant's malicious and intentional act
prevented the relationship from occurring, doing harm to the plaintiff, (3) the
defendant lacked privilege or justification, and (4) as a result, the plaintiff suffered
actual damage or loss. Winston v. Amer. Med. Int'l, Inc., 930 S.W.2d 945, 953 (Tex.
App.--Houston [1st Dist.] 1996, writ denied). Yetiv's tortious interference claim
specifically asserts that Huey's 

campaign of harassment . . . interfered with the creation of new lease
contracts because refusal to issue permits prevented the timely
remodeling of the apartments at the Property. In addition, no leasing
occurred (or could have occurred) at all on October 27, 1994, due to the
'appropriation' of the Property by [Huey and Link] during their raid. In
addition, by their threats to [Yetiv's] workers on October 27, 1994,
[Huey and Link] interfered with contractual relationships between
[Yetiv] and [his] employees. There are, thus, three bases for Huey's liability for tortious interference under Yetiv's
pleadings: (1) the refusal to issue permits, (2) an illegal search on October 27, 1994,
and (3) threats made to Yetiv's employees during the illegal search. (4)
 While the jury
in Yetiv's actions against the City found that the City had both (1) arbitrarily and/or
capriciously denied or withheld permits from Yetiv and (2) undertook one or more
searches of [Yetiv's] property without a search warrant and/or that searches were
beyond the scope of the warrant, those findings were reversed on appeal. In resolving
the claims against the City, the issue of whether refusal to issue a permit and an
illegal search caused Yetiv injury was fully and fairly litigated. The determination
of these issues was essential to the judgment against Yetiv in that action, and, thus,
he is collaterally estopped from relitigating the issue in the instant action against
Huey. See Turnage, 64 S.W.3d at 617. The trial court did not err in sustaining
Huey's special exceptions on the grounds of collateral estoppel. 

 Accordingly, we overrule Yetiv's first issue with respect to his tortious
interference claim.

 b. Malicious Prosecution and Abuse of Process

 To prevail on a claim of malicious prosecution, a plaintiff must establish the
following: (1) commencement of a criminal prosecution against the plaintiff, (2)
initiated or procured by the defendant, (3) termination of the prosecution in the
plaintiff's favor, (4) the plaintiff's innocence, (5) the defendant's lack of probable
cause to initiate the proceedings, (6) malice in filing the charge, and (7) damages. 
 Burrows v. Neiman-Marcus Group, Inc., 976 S.W.2d 784, 787 (Tex. App.--Houston
[1st Dist.] 1998, no pet.). An abuse of process occurs where: (1) the defendant made
an illegal, improper, perverted use of the process; (2) the defendant had an ulterior
motive or purpose in exercising such illegal, perverted, or improper use of process;
and (3) that damage resulted to the plaintiff from the irregularity. Detenbeck v.
Koester, 886 S.W.2d 477, 480 (Tex. App.--Houston [1st Dist.] 1994, no writ). 

 In this context, Yetiv alleged that he was required to hire an attorney when
building officials wrote him 21 criminal citations in order to advance the wrongful
purposes alleged in his pleadings. (5) Yetiv further alleges that each of these citations
was dismissed when building officials failed to appear on the designated court dates.
The issues surrounding these citations were not fully and fairly litigated in Yetiv's
previous action against the City. In reversing the finding of liability against the City
and rendering judgment that Yetiv take-nothing on his claims, this Court restricted
its holding to a discussion of the City's liability under section 1983 where there was
no evidence establishing a City policy or custom to (1) demolish or illegally search
low-income housing and (2) withhold permits. (6) See Aspenwood Apartment Corp.,
1999 WL 681939 at * 7, 12. That is, there was no discussion of the citations in this
Court's resolution of the litigation against the City. Because the issues surrounding
the issuance of 21 criminal citations against Yetiv were not fully or fairly litigated in
Yetiv's previous action against the City, the trial court erred in sustaining Huey's
special exceptions on the grounds that Yetiv was collaterally estopped from asserting
his malicious prosecution and abuse of process claims. 

 Accordingly, we sustain Yetiv's first issue only as to his malicious prosecution
and abuse of process claims. Link's Motion for Summary Judgment

 In his second issue, Yetiv argues that it was error for the trial court to grant
summary judgment in favor Link because she failed to conclusively establish her
affirmative defenses. We disagree in part.

A. Standard of Review

 The standard of review in a summary judgment proceeding is well settled. 
When a defendant moves for summary judgment on an affirmative defense, she is
entitled to a summary judgment if she conclusively establishes each of the essential
elements of her affirmative defense as a matter of law. Montgomery v. Kennedy, 669
S.W.2d 309, 310-11 (Tex. 1984); Marshall v. Sackett, 907 S.W.2d 925, 930 (Tex.
App.--Houston [1st Dist.] 1995, no writ). Evidence is conclusive only if reasonable
persons could not differ in their conclusions. City of Keller v. Wilson, 168 S.W.3d
802, 816 (Tex. 2005). If the defendant produces sufficient evidence to establish the
right to a summary judgment, the plaintiff must present contradictory evidence that
gives rise to a fact issue in order to avoid summary judgment. Marshall, 907 S.W.2d
at 930. 

 On appeal, evidence favorable to the nonmovant will be taken as true. Id. In
addition, every reasonable inference from the evidence must be indulged, and any
doubts resolved, in the nonmovant's favor. Id. When, as here, a summary judgment
does not specify the grounds on which it was granted, we will affirm the judgment if
any one of the theories advanced in the motion is meritorious. Joe v. Two Thirty Nine
Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).

B. Analysis

 Yetiv asserted the same section 1983, state constitutional, and intentional tort
claims against Link. In her motion for summary judgment, Link argued, as
affirmative defenses, (1) that all of Yetiv's claims were barred by section 101.106 of
the Texas Tort Claims Act, as well as by the doctrines of collateral estoppel and res
judicata and (2) that Yetiv's section 1983 claims were barred by the statute of
limitations. For the reasons set-forth in our analysis of the doctrine of collateral
estoppel as it applied to Yetiv's claims against Huey, we hold that Yetiv is
collaterally estopped from asserting his section 1983 claims, state constitutional
claims, and tortious interference with a contract claims against Link. In addition, for
the reasons set-forth above, the only claims which Yetiv was not precluded from
asserting by the doctrine of collateral estoppel were his claims for malicious
prosecution and abuse of process. As an alternative affirmative defense to the
malicious prosecution and abuse of process claims, Link asserted that section 101.106
of the Texas Tort Claims Act prevented Yetiv from pursuing his action. Accordingly,
we consider whether Link's summary judgment evidence conclusively established
this affirmative defense. 

 While Link's motion for summary judgment was filed in 2005, Yetiv's claims
against her were filed in 1997. In 2003, the legislature amended section 101.106 of
the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann. § 101.106
(Vernon 2005). The enabling language of section 101.106 provides, however, that: 

Except as otherwise provided in this section or by a specific provision
in an article, this Act applies only to an action filed on or after the
effective date of this Act. An action filed before the effective date of
this Act, including an action filed before that date in which a party is
joined or designated after that date, is governed by the law in effect
immediately before the change in law made by this Act, and that law is
continued in effect for that purpose. 


Act of June 2, 2003, 78th Leg., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 847, 899. 
Because Yetiv filed his action against Link before the 2003 effective date of the Act,
we consider his claims under the law in effect immediately before the 2003
amendments.

 The prior version of section 101.106 provided that "[a] judgment in an action
or a settlement of a claim under this chapter bars any action involving the same
subject matter by the claimant against the employee of the governmental unit whose
act or omission gave rise to the claim." Act of 1985, 69th Leg., ch. 959, § 1, eff. Sept.
1, 1985 (amended 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. §
101.106 (Vernon 2005). The then-existing-statute barred any action against an
employee of a governmental unit that arose out of the "same actions, transactions, or
occurrences." Brand v. Savage, 920 S.W.2d 672, 675 (Tex. App.--Houston [1st
Dist.] 1995, no writ). Here, Yetiv submitted questions to the jury only with respect
to the City's action in (1) retaliating against him for engaging in public speech, (2)
undertaking searches of his property without a warrant or in excess of the scope of
the warrant, and (3) arbitrarily and/or capriciously withholding building permits. See
Aspenwood Apartment Corp., 1999 WL 681939, at *4. Accordingly, the judgment
in the action against the City only addressed those three subject matters. The
judgment did not address the subject matter of malicious prosecution or abuse of
process through the issuance of the criminal citations alleged in Yetiv's pleadings. 
These citations represented an action concerning a different subject matter. Section
101.106 does not, therefore, preclude Yetiv's assertion of these claims. 

 Because Link did not conclusively establish that Yetiv's malicious prosecution
and abuse of process actions were barred by either the doctrine of collateral estoppel
or section 101.106 of the Texas Tort Claims Act, the trial court erred in granting
summary judgment on these claims. We sustain Yetiv's second issue only with
respect to his malicious prosecution and abuse of process claims. 

Conclusion

 We affirm in part and reverse and remand in part.


 George C. Hanks, Jr.

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.








 
1. Huey and Link were sued in their individual and official capacities. 
2. This same final judgment incorporated the trial court's order dismissing Yetiv's claims
against Huey. 
3. Section 1983 provides in pertinent part that:

Every person who, under color of any statute, ordinance, regulation, custom,
or usage, of any State or Territory or the District of Columbia, subjects, or
causes to be subjected, any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper proceeding for
redress, . . .

42 U.S.C. § 1983 (2000) (emphasis added).
4. According to the statement of facts in Yetiv's counterclaim, 


On October 27, . . . an illegal raid was mounted by the City of Houston,
beginning with an overflight by a police helicopter, and then the subsequent
appearance of approximately 4-5 police cruisers, as many as 10 police officers,
and perhaps 30 City Inspectors and private contractors over the course of the
day. . . . This "raid" was purportedly conducted pursuant to a search warrant.
. . . The sworn affidavit which led to the creation of the search warrant . . .
executed by two City of Houston agents contains several false statements. . .
. In any case, even if the affidavit had been truthful, the City's agents far
exceeded the scope of the search warrant, even if the search warrant was valid. 


The statement of facts does not indicate what threat to Yetiv's employees, if any, was made
by Huey.


5. Yetiv's pleadings assert that Huey was engaged in a "campaign of harassment" for the
purpose of fulfilling her promises to area-residents to demolish low-income housing. 
6. Huey's special exceptions represent that this Court's prior holding was that,

 

City of Houston decisions leading to search warrants and citations involving
[the property in question], as well as building permits, were not based on
inappropriate decisions of Beatrice Link, the Houston City Council [Defendant
Huey] and/or through a pattern, practice, policy or custom in the City . . . .
(Emphasis added.) 


However, the Court was considering the more narrow question, as it was presented to the
jury, whether 


the [City] undertook one or more searches of [Yetiv's] property without a
search warrant which was based on a truthful affidavit and/or that such
searches were beyond the scope of the warrant through the decisions of
Beatrice Link, the Houston City Council and/or through a pattern, practice,
policy or custom of the City. 

 

See Aspenwood Apartment Corp., 1999 WL 681939 at * 4. That is, the citations were not
included in either the jury's considerations or this Court's earlier analysis or opinion.